IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION No. 2:13-CR-150 |
| | § | (CIVIL ACTION NO. 2:14-CV-132) |
| GLEN LEE SYMPSON | § | |

### MEMORANDUM OPINION AND ORDER

Glen Lee Sympson (Sympson) filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 27)[1], to which the United States ("the Government") has responded (D.E. 49). Sympson did not reply.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Sympson was indicted in January 2013 for the robbery of Prosperity Bank, a federally-insured bank in Corpus Christi, Texas, in violation of 18 U.S.C. § 2113(a). On June 3, 2013, Sympson pled guilty to the indictment pursuant to a plea agreement. D.E. 14. In exchange for his guilty plea and his waiver of his right to appeal or file a § 2255 motion, the Government agreed to recommend maximum credit for acceptance of responsibility and to recommend a sentence within the applicable guideline range. *Id.*, ¶¶ 1, 2, 7.

At rearraignment, Sympson testified that he read the indictment, discussed it with counsel, and understood the charges against him. D.E. 34, pp. 8-10. He testified that he had enough time to

---

[1] Docket entries refer to the criminal case.

discuss his case with his attorney and that he was satisfied with counsel's services. *Id.*, pp. 5-6. The Court advised Sympson of his trial rights. Sympson waived them and waived his right to remain silent. *Id.*, p. 6-7. The Court reviewed the indictment and the maximum punishment. Sympson testified that he understood, and further acknowledged that he had discussed the guidelines and how his sentence would be calculated with his counsel. *Id.*, pp. 10-11. He denied that he was promised leniency if he pled guilty, denied he was forced or threatened to plead guilty, and denied that he had been promised a specific sentence. *Id.*, pp. 11, 13. The Court questioned Sympson regarding his waivers of his right to appeal or to file a § 2255 motion.[2] Sympson testified he was aware of and understood the waivers. Sympson pled guilty and agreed with the factual recitation by the Government. *Id.*, pp. 11-13. The Court ordered preparation of a Presentence Investigation Report (PSR). D.E. 13.

Probation calculated Sympson's base offense level at 20 pursuant to § 2B3.1(a) of the United States Sentencing Guideline Manual. D.E. 17, ¶ 16. His base offense level was increased because

---

[2]
```
 1 . . . At page 3, paragraph 7, you are giving
 2 up your rights to appeal your conviction and sentence unless I
 3 sentence you above the statutory maximum or depart upward from
 4 the guidelines when not requested to do so by the government.
 5 Do you want to give up these rights of appeal?
 6 THE DEFENDANT: Yes, sir.
 7 THE COURT: You're also giving up your right to file
 8 a 2255 petition, which defendants are otherwise able to use
 9 after their conviction becomes final and their sentence becomes
10 final, in which you ask the Court to look at the case again to
11 see whether or not there were any fundamental errors that allow
12 the Court to modify or vacate or change in some way the
13 conviction or sentence is. Do you understand?
14 THE DEFENDANT: Yes, sir.
15 THE COURT: You're giving up that right, as well. Do
16 you want to give up these rights?
17 THE DEFENDANT: Yes.
18 THE COURT: Of page 3, paragraph 7?
19 THE DEFENDANT: Yes, sir.
```
D.E. 14, p. 13.

property was taken from a financial institution and further increased for brandishing or possessing a dangerous weapon. *Id.*, ¶¶ 17, 18. After credit for acceptance of responsibility, Sympson's total offense level was 22. *Id.*, ¶ 24. Sympson was previously convicted of robbery and burglary of a habitation, which qualified him as a career offender. *Id.*, ¶ 25. As a result, his offense level was increased to 32. After acceptance of responsibility, his total offense level was 29. *Id.*, ¶¶ 25-27. Sympson's actual criminal history category was V but was increased to VI as a result of his classification as a career offender. *Id.*, ¶¶ 29-36. His guideline sentencing range was 151 to 188 months, with a maximum statutory sentence of 20 years. *Id.*, ¶¶ 59-61.

Sentencing was held in August 2013. There were no objections or corrections to the PSR. D.E. 35, p. 3. The Government recommended a mid-range sentence of 168 months. Defense counsel requested a below-guideline sentence on the grounds that the career offender enhancement overstated the seriousness of Sympson's criminal history. Sympson was convicted in 1999 and 2000 when he was 17 years old and then again in 2004 when he was 22. While he was in prison, he earned college credits. After he was released, Sympson was gainfully employed and living a stable and productive life until he lost his job. Defense counsel also pointed out that Sympson was likely facing a state parole violation with a prospective sentence for that as well as the current federal charge. *Id.*, pp. 6-7. Sympson did not speak at the hearing but wrote a letter to the Court that the Court considered. *Id.*, p. 8. The Court adopted the PSR as written and sentenced Sympson to 156 months in the Bureau of Prisons, to be follows by three years supervised release, and ordered restitution in the amount of $40. The remainder of the bank's money was recovered. *Id.*, pp. 9-10.

Judgment was entered on August 27, 2013. D.E. 23. Sympson did not appeal but timely filed the present motion. D.E. 27.

### III. MOVANT'S ALLEGATIONS

Sympson raises the following claims: 1) the Government violated state and federal law by committing perjury in order to negatively influence the judge at sentencing; 2) his Fourth Amendment rights were violated when he was interrogated after he requested counsel; 3) the prosecution used non-existent evidence by adding a firearm enhancement to the PSR; 4) his constitutional right against double jeopardy was violated by the use of his prior crimes to enhance his offense and criminal history levels, essentially punishing him twice for crimes for which he had already been punished; and 5) he asked defense counsel to present these issues at sentencing, but counsel refused, which constituted ineffective assistance of counsel.

## IV. ANALYSIS

**A.    28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

**B.    Sympson Waived His Right to File a Motion to Vacate**

Sympson waived his right to file a motion to vacate by his plea agreement. D.E. 14, ¶ 7. He did not address the waiver in his motion.

Sympson does not argue that counsel was ineffective before his guilty plea, but only after the plea and at sentencing. His claims of ineffective assistance do not automatically relieve him of

4

his waivers of appeal and § 2255 post-conviction proceedings. *See United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002) (An ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself."). In *White*, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." *Id.* at 343 (internal citations omitted).

Sympson was questioned at rearraignment regarding his understanding of the charges against him, was informed of the maximum punishment, swore he was not promised leniency for his plea or promised a specific sentence, and testified that he understood how his sentencing range would be calculated using the sentencing guidelines. He was also questioned regarding the plea agreement, his waiver of his right to appeal, and his right to file a § 2255 motion. He testified that he understood the plea agreement and understood that he was waiving these rights.

Courts give great weight to a defendant's statements during the plea colloquy. *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002); *see also United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994) (placing great weight on defendant's statements during plea); *United States v. Maldonado-Rodriguez*, 64 F.3d 719, 733 (1st Cir. 1995) (giving credence to defendant's representations at plea hearing that he had not been pressured).

Sympson's testimony that he understood he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motion is all that is required for his waiver to be enforceable. *See Wilkes*, 20 F.3d at 653 ("[A] defendant can waive his right to appeal as part of a plea agreement if the waiver is informed and voluntary."). The Court finds that Sympson's plea

5

agreement and his waiver of § 2255 rights contained therein are valid and enforceable. *Id*. His claims fall within the scope of his waiver and are barred from consideration.

## V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Sympson has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A Certificate of Appealability (COA) "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Sympson is not entitled to a COA

on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed further. *See Jones*, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Sympson's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 27) is **DENIED** and he is also **DENIED** a Certificate of Appealability.

It is so **ORDERED.**

**SIGNED** on this 25th day of February, 2015.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE